UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GLORIA JEAN INGRAM &
TRINITY KENNICE INGRAM,
    Plaintiffs,

vs.                                                                 Case No.: 3:23cv18414/TKW/ZCB

NATHAN BERTRAM, et al.,
    Defendants.
_____/

# REPORT AND RECOMMENDATION

This is a civil rights case filed against employees of the Walton County Sheriff's Office (WCSO) under 42 U.S.C. § 1983 and federal Drug Enforcement Administration (DEA) agents under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Currently before the Court are motions for summary judgment filed by Defendants Key, Coone, and Bertram of the WCSO. (Docs. 77, 78, 85). Plaintiffs have responded in opposition (Doc. 93), and Defendants Key, Coone, and Bertram have replied. (Doc. 94). For the reasons below, Defendants Key, Coone, and Bertram are entitled to summary judgment.

1

## I. The Allegations

This case stems from an investigation into the drug trafficking activities of Kenneth Ingram.[1] On July 13, 2019, at around 6:30 p.m., a deputy with the Walton County Sheriff's Office conducted a traffic stop of car in which Mr. Ingram was a passenger. A search of the car yielded 1.7 kilograms of cocaine and $4,000 in cash. Later that evening, a drug task force comprised of Walton County deputies and agents from the DEA arrived at Mr. Ingram's residence. That is where the allegations in this case begin.

Plaintiffs (Gloria Ingram, Mr. Ingram's wife; and Trinity Ingram, Mr. Ingram's daughter) allege that at "some point during the evening hours," law enforcement officers forcibly entered the residence and began to search it. According to Plaintiffs' allegations, the officers entered without warning, had weapons drawn, and were shouting. Plaintiffs further allege that while Gloria—who uses a cane due to a medical condition—was attempting to comply with instructions to get down on

---

[1] The Court takes judicial notice of the fact that Kenneth Ingram was subsequently convicted of federal drug trafficking charges and sentenced to 70 months' imprisonment. (3:19-cr-113, Doc. 450). *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (authorizing a court to take judicial notice of another court's orders).

the floor, an officer struck Gloria's ankles with a police baton and slammed her to the ground. This allegedly caused Gloria to fall down on her knees and shoulder. The same officer allegedly twisted Gloria's arm and placed his knee in her back. Upon seeing this happen to her mother, Trinity Ingram allegedly screamed and reached for Gloria. At that time, an officer allegedly hit Trinity with a police baton and threw her to the ground.

During the encounter, Gloria asked to see the search warrant multiple times. The officers, however, allegedly failed to produce a warrant. According to Plaintiffs, the officers did not produce a search warrant because they did not have a warrant until after the search was conducted. The search led to the discovery of illegal drugs, as well as eight firearms.

In their complaint, Plaintiffs claim that they suffered serious injuries as a result of the force used against them during the search. More specifically, Gloria claims she suffered a knee injury that required surgery and multiple herniated disks in her back. She also claims to have experienced severe emotional distress. And Trinity claims that the incident caused her to suffer an ankle injury that required surgery, a torn

labrum in her shoulder, and herniated disks in her back. Additionally, Trinity allegedly experienced severe emotional distress.

The named Defendants in the complaint include the Walton County Sheriff, Michael Adkinson, Jr., deputies with the Walton County Sheriff's Office, as well as two DEA agents. The named Walton County deputies are Nathan Bertram, Damon Byrd, Brandon Coone, Tammy Goodwin, Steve Key, and Alysha Landis. The named DEA agents are Kevin Miller and John Manna. The complaint asserts that all Defendants violated the Fourth Amendment by using excessive force on Plaintiffs during the search on July 13, 2019. The claims against the Walton County Defendants have been brought under 42 U.S.C. § 1983. The claims against the DEA Defendants have been brought under *Bivens*. In terms of relief, Plaintiffs have sought compensatory and punitive damages, as well as attorney's fees.

## II. Procedural History

Defendants filed motions to dismiss. (Docs. 26, 27). The district judge granted the motion to dismiss filed by Defendant Adkinson (the Sheriff) and denied the other motions to dismiss. (Doc. 31). Plaintiffs later voluntarily dismissed their claims against Defendants Goodwin,

Landis, and Byrd. (Docs. 49, 51).[2] Thus, the remaining Defendants are Walton County deputies Key, Coone, and Bertram, and DEA agents Miller and Manna. The remaining Defendants have moved for summary judgment. In this opinion, the Court addresses the motion for summary judgment filed by Defendants Key, Coone, and Bertram.[3]

### III.  Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a

---

[2] Plaintiffs were initially represented by Attorney Nathan Prince. He later withdrew as counsel. (Docs. 52, 53). Attorneys Marie Mattox and Farnita Saunders Hill then appeared on behalf of Plaintiffs. (Docs. 58, 65). Attorneys Mattox and Hill subsequently withdrew. (Docs. 72, 80). Plaintiffs are now representing themselves.

[3] The Court previously issued an opinion recommending that summary judgment be granted in favor of the DEA Defendants. (Doc. 96).

jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When answering that question, courts view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). Thus, "if the evidence is merely colorable or if it is not significantly probative, then summary judgment is appropriate." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1159 (11th Cir. 2022) (cleaned up). Likewise, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

When evaluating a Fourth Amendment excessive force claim, courts apply an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To determine whether the amount of force used was reasonable, court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (cleaned up). "Not every push or shove, even if it may later seem unnecessary in the

peace of a judge's chambers, violates the Fourth Amendment." *Id.* (cleaned up). And the Eleventh Circuit "has long declined to entertain claims of excessive force predicated upon the use of *de minim[is]* force by law enforcement." *Croom v. Balkwill*, 645 F.3d 1240, 1252 (11th Cir. 2011).

## IV. Discussion

As explained below, Defendants Key, Coone, and Bertram are entitled to summary judgment because no reasonable jury could find that they used excessive force against Plaintiffs. The Court will proceed to discuss each Defendant individually.

**A. Defendant Key**

Let's start with the allegation that Defendant Key used excessive force against Plaintiffs. What the record evidence shows without genuine dispute is that Defendant Key used no force (let alone excessive force) against Plaintiffs. According to Defendant Key's sworn declaration and his deposition testimony, Defendant Key never touched Plaintiffs. (Doc. 76-1 at 1-2; Doc. 76-2 at 21). And Plaintiffs confirmed during their depositions that Defendant Key did not use any force against them. Here are the relevant excerpts from Plaintiff Trinity Ingram's deposition:

> Q: So was—did Key push you to the floor?

7

>   A: No.
>   Q: Did Key have a baton?
>   A: No.
>   . . . .
>   Q: Did Key put you in the zip ties?
>   A: No.
>   . . . .
>   Q: Did Key run over you?
>   A: No.

(Doc. 73-1 at 56-58). And now for the relevant excerpts from Plaintiff Gloria Ingram's deposition:

>   Q: Okay. Was it Key who told you to get to the ground?
>   A: No.
>   . . . .
>   Q: Did Key push you to the ground?
>   A: No.
>   Q: Did Key hit you with a baton?
>   A: No.
>   Q: Did Key step on you?
>   A: No, just rude.

(Doc. 73-2 at 48, 55).

According to Plaintiffs, force was used against them by a member(s) of the SWAT team that initially made entry into the house. But it is undisputed that Defendant Key was not a member of the SWAT team.[4]

---

[4] (Doc. 76-1 at 1, 2) ("I am not now, nor have I ever been a member of SWAT . . . . I remained across the street while SWAT team cleared the residence."); (Doc. 73-1 at 56) (Q: "And what about Key, was he part of the SWAT team?" A: "No."); (Doc. 73-2 at 38-39) (Q: "[Key] was not part of the SWAT group?" A: "No.").

8

Rather, the record clearly shows that he was an investigator who did not enter the house until after the SWAT team had secured it. So not only does the record show that Defendant Key never used force against Plaintiffs, it shows without genuine dispute that Defendant Key was not even present in the house when the alleged excessive force was used by members of the SWAT team.

Because "the record taken as a whole could not lead a rational trier of fact to find for [Plaintiffs]" on their excessive force claims against Defendant Key, "there is no genuine issue for trial." *Scott v. Harris,* , 550 U.S. 372, 380 (2007) (cleaned up). Here, what the record evidence[5] shows without genuine dispute is that Defendant Key used no force (let alone excessive force) against Plaintiffs. Accordingly, Defendant Key is entitled to summary judgment.

---

[5] Plaintiffs' first amended complaint (Doc. 23) is unverified, and "at summary judgment, a party cannot rely solely on allegations from an unverified complaint." *See Liebman v. Metro. Life Ins. Co.*, 708 F. App'x 979, 983 n.3 (11th Cir. 2017). Additionally, the statements made in Plaintiffs' response in opposition to the summary judgment motions are unsworn. And "[u]nsworn statements . . . cannot be considered by a district court in ruling on a summary judgment motion." *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (cleaned up).

### B. Defendant Coone

Similar to Defendant Key, the record evidence shows without genuine dispute that Defendant Coone did not use force (let alone excessive force) against Plaintiffs. According to Defendant Coone's sworn declaration, he never even encountered Plaintiff Trinity Ingram while he was in the residence. (Doc. 76-11 at 2). And he "did not ever physically touch [Plaintiff] Gloria Ingram, nor did [he] observe anyone else physically touch [Plaintiff] Gloria Ingram." (*Id.*). Plaintiffs confirmed during their depositions that Defendant Coone did not use any force against them. Here are the relevant excerpts from Plaintiff Trinity Ingram's deposition:

> Q: Okay. What about Coone? Did Coone push you to the floor?
> A: No.
> Q: Did Coone have a baton?
> A: No.
> . . . .
> Q: Did Coone put you in zip ties?
> A: No.
> . . . .
> Q: Did Coone run over you?
> A: No.

(Doc. 73-1 at 57-58). And now for the relevant excerpts from Plaintiff Gloria Ingram's deposition:

> Q: And was it Coone who told you to get to the ground?
> A: No.

>     . . . .
> Q: Okay. Did Coone knock you to the ground?
> A: No.
> Q: Did Coone hit you with a baton?
> A: No.
> Q: Did—did Coone step on you?
> A: No.

(Doc. 73-2 at 48, 55).

Because "the record taken as a whole could not lead a rational trier of fact to find for [Plaintiffs]" on their excessive force claims against Defendant Coone, "there is no genuine issue for trial." *Scott*, 550 U.S. at 380. Here, what the record evidence shows without genuine dispute is that Defendant Coone used no force (let alone excessive force) against Plaintiffs. Accordingly, Defendant Coone is entitled to summary judgment.

### C. Defendant Bertram

#### 1. Trinity Ingram's claim against Defendant Bertram

Much like Defendants Key and Coone, the record evidence shows without genuine dispute that Defendant Bertram did not use excessive force against Plaintiffs. The Court will start with the claim that Defendant Bertram used excessive force against Plaintiff Trinity Ingram. According to Defendant Bertram's sworn declaration, he did not interact at all with Plaintiff Trinity Ingram during the execution of the search

11

warrant. (Doc. 76-12 at 2). That statement is consistent with Plaintiff Trinity Ingram's deposition testimony, where she stated as follows:

> Q: And you said Bertram did not push you to the floor, correct?
> A: Yes. I said no.
> Q: Okay. And Bertram did not have a baton?
> A: No.
> Q: All right. Did Bertram place you in the zip ties?
> A: No.
> . . . .
> Q: And just to be clear because you said that they were—they ran on top of you. Did Bertram run over you?
> A: No.

(Doc. 73-1 at 57).

Because "the record taken as a whole could not lead a rational trier of fact to find for" Plaintiff Trinity Ingram on her excessive force claim against Defendant Bertram, "there is no genuine issue for trial." *Scott*, 550 U.S. at 380. Here, what the record evidence shows without genuine dispute is that Defendant Bertram used no force (let alone excessive force) against Plaintiff Trinity Ingram. Accordingly, Defendant Bertram is entitled to summary judgment on Plaintiff Trinity Ingram's claims against him.

### 2. Gloria Ingram's claim against Defendant Bertram.

The Court will now move to Plaintiff's Gloria Ingram's claim that Defendant Bertram used excessive force against her. According to

Defendant Bertram's sworn declaration, he never ordered Plaintiff Gloria Ingram to the ground, he never struck her, and he never stepped on her. (Doc. 76-12 at 3). In Plaintiff Gloria Ingram's deposition, she denied that Defendant Bertram struck her or pushed her:

> Q: All right.  Did Bertram push you to the floor?
> A: No, he did not.
> Q: Did Bertram hit you with a baton?
> A: No, he did not.

(Doc. 73-2 at 54). With regard to whether Defendant Bertram had stepped on her while she was on the ground, Plaintiff Gloria Ingram provided inconsistent testimony. She testified that Defendant Bertram helped her up off the floor. (*Id*.). But she stated that she "can't say that" Defendant Bertram "did not" step on her because there were "so many of them." (*Id*.). Then later in her deposition Plaintiff Gloria Ingram stated that Defendant Bertram did step on her. (*Id*. at 54-55). But when further questioned, she stated that Defendant Bertram failed to "stop[] anybody from stepping on top of me." (*Id*. at 56).[6]

It is clear from reading the entire deposition that Plaintiff Gloria Ingram was speculating about whether Defendant Bertram had stepped

---

[6] In any event, the first amended complaint says nothing about Defendant Bertram—or any other Defendant for that matter—stepping on or trampling over Plaintiff Gloria Ingram.

13

on her. And "[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1170 (11th Cir. 2018) (emphasis in original). Moreover, the information in the record is insufficient for any rational trier of fact to find that if Defendant Bertram did step on Plaintiff that he did so in a manner that would constitute excessive force. If Defendant Bertram did step on Plaintiff Gloria Ingram, such force was clearly *de minimis* under the circumstances. *See Croom v. Balkwill*, 645 F.3d 1240, 1252-53 (11th Cir. 2011) (finding officers did not use excessive force by pushing woman to the ground and putting foot on her back to keep her down during the execution of a search warrant).

Finally, the record blatantly contradicts any claim by Plaintiff Gloria Ingram that she suffered injuries as a result of force used by Defendant Bertram (or anybody else involved in the search warrant execution). *See Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). The medical records (and deposition testimony)

14

unequivocally undermine any claim that Plaintiff Gloria Ingram (or Plaintiff Trinity Ingram) suffered the alleged injuries as a result of conduct by Defendant Bertram or any other Defendant. Indeed, what the information in the record shows is that Defendants did not cause the alleged injuries set forth in the first amended complaint. Accordingly, Defendant Bertram is entitled to summary judgment on Plaintiff Gloria Ingram's claims against him.[7]

## V.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. The motions for summary judgment filed by Defendants Key, Coone, and Bertram (Docs. 77, 78, 85) be **GRANTED**.

2. The Clerk of Court be directed to withhold entering judgment and closing the case until after the Court resolves any motions for sanctions that may be filed by Defendants.[8]

---

[7] Although Plaintiffs have not brought failure to intervene claims, such claims would fail had they been made. There is nothing in the record from which a rational juror could find that any of the Defendants observed excessive force and failed to take action to stop it.

[8] Defendants previously expressed an intention to seek sanctions in this case. (Doc. 79). The Court reserved jurisdiction over Plaintiffs' former counsel regarding the issue of possible sanctions. (Doc. 80).

3.    If any of the Defendants wish to pursue sanctions, such a motion shall be filed within **fourteen days** of the district judge's ruling on this report and recommendation. (Doc. 79-6).

At Pensacola, Florida this 21st day of November 2025.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of this Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.